3:26-mj-00069

**DISTRICT OF OREGON, ss:**                    **AFFIDAVIT OF NATHAN HIBBS**

### Affidavit in Support of a Criminal Complaint and Arrest Warrant

I, Nathan Hibbs, being duly sworn, do hereby depose and state as follows:

### Introduction and Agent Background

1.      I am a Task Force Officer (TFO) for the Federal Bureau of Investigation and have a special deputation to investigate and enforce violations of Title 18 and Title 21 of the United States Code, which includes firearm and controlled substances offenses.  I am a Police Detective employed by the City of Gresham Police Department, assigned as a criminal investigator to the Gresham Police Department (GPD) Investigations Division.  I am a sworn police officer and have been for more than 20 years.  I am currently assigned to the Multnomah County Sherriff's Office's (MCSO) Special Investigations Unit (SIU) investigating narcotics related crimes.  I have conducted multiple investigations into weapons offenses and drug trafficking offenses. Through this training and experience, I have become familiar with the manner in which drug traffickers operate to carry out their criminal activity.

2.      I submit this affidavit in support of a criminal complaint and arrest warrant for **AARON NATHANIEL GABBERT** (**GABBERT**) for committing the felony offenses of:

- Possession with Intent to Distribute Cocaine, a Schedule II Controlled Substance, in violation of 21 U.S.C. § 841(a)(l) and 841(b)(1)(C); and,

- Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c),

(hereinafter the Target Offenses).  As set forth below, there is probable cause to believe, and I do believe, that **GABBERT** committed the Target Offenses.

///

**Applicable Law**

3.     21 U.S.C. § 841(a)(1) makes it unlawful for any person to knowingly or intentionally distribute or possess with intent to distribute a controlled substance.

4.     18 U.S.C. § 924(c) makes it unlawful for a person to knowingly possess a firearm in furtherance of a federal felony drug trafficking crime.

**Statement of Probable Cause**

5.     On March 23, 2026, as part of an ongoing investigation in which we had identified **GABBERT** as a distributor of cocaine, I applied for and received federal search warrants for **GABBERT**'s residence, located at xxxx SE 114th Place, Portland, Oregon, as well as two vehicles he had used to deliver cocaine to an informant.  On March 23, 2026, the Honorable Youlee You, United States Magistrate Judge, authorized the search warrants.

6.     On March 25, 2026, SIU and FBI Investigators executed the search warrants. Entry was made into **GABBERT's** residence and he was present and detained.  Also present and detained was **GABBERT**'s live in girlfriend.

7.     Investigators began a search of the residence and I interviewed **GABBERT**.  I explained the search warrant to him and asked for his cooperation.   I advised **GABBERT** of his constitutional *Miranda* rights from a prepared card.  When asked if he understood his rights he told me he did.

8.     I asked **GABBERT** to tell me what drugs he had in his house.  **GABBERT** told me there were four to five ounces of cocaine in a refrigerator that was in a room in the basement,

Page 2 – Affidavit of Nathan Hibbs

as well as multiple pounds of psilocybin mushrooms and an ounce of ecstasy in the same room. **GABBERT** said the amounts were approximate. **GABBERT** told me he sells those drugs. **GABBERT** also told me he sells cocaine in quantities of ounces and below. During the interview, **GABBERT** told me he had been about to leave his residence to go sell about an ounce of cocaine to a female customer for $1,000. **GABBERT** told me he had been selling cocaine for years and admitted to purchasing between 17 and 18 kilograms from different people during that time, going back possibly as far 2019, which he in turn sold to various customers. **GABBERT** also told me he was unsure the year he started buying and selling cocaine.

9.    When I was in the residence I observed a semi-automatic shotgun next to **GABBERT**'s bed. The shotgun was found to be loaded. During a search of the residence Investigators located and seized 34 firearms, which included rifles, a shotgun, and handguns. Many of the firearms were loaded. I asked **GABBERT** about firearms that we had found in his residence and he told me he had purchased all of them. He told me he had them for protection or "security." I noted one of the firearms was a short-barreled AR-15 type semi-automatic rifle, later measured to have an 8-inch barrel. Investigators also located a ballistic helmet and ballistic vest in the residence. I later learned two of the handguns found had been reported stolen.

10.    Inside the residence Investigators located approximately 477.6 gross grams of cocaine, the weight of which included the plastic bags containing the cocaine. In the same basement room, where the majority of the cocaine was located, were multiple firearms, including loaded handguns and a loaded AR-15 style semiautomatic assault rifle, as well as $11,700 in U.S. currency. In the same room as where the cocaine and majority of the firearms were found

**Page 3 – Affidavit of Nathan Hibbs**

Investigators also found what appeared to be a 3-D printed firearm suppressor, also known as a "silencer."

11.     Samples from the suspected cocaine were tested using Mobile Detect field tests and the tests returned a positive result for the presence of cocaine, a Schedule II controlled substance. I have found such field tests to be reliable with subsequent forensic analysis repeatedly confirming the results.

12.     After asking **GABBERT** about guns and drugs, I asked **GABBERT** if he had any bombs in his house. He immediately told me he had a "pipe bomb" in the same basement room as the cocaine. He described the "pipe bomb" and its location and told me he had constructed it using an explosive charge from a large firework. Investigators located it as described. The device was seized by the Bomb Squad for further investigation. Another suspected destructive device was also located in the residence and seized by the Bomb Squad. The second device was X-rayed and found to have sheet metal screws built into it, presumably to act as shrapnel. **GABBERT** was unsure if he constructed that device or had retrieved it from his brother's property when his brother died. Both devices are being analyzed.

13.     A picture of one of the bags of cocaine that was seized is below:

///

///

///

**Page 4 – Affidavit of Nathan Hibbs**



14.    A picture of the 34 firearms seized from **GABBERT's** residence is below:



**Page 5 – Affidavit of Nathan Hibbs**

15.    An X-ray picture of the suspected destructive device found within the residence and containing sheet metal screws is below:



16.    **GABBERT** was transported to jail and lodged on federal charges.

17.    I know, based upon my training and experience, that cocaine is an addictive Schedule II controlled substance usually seen as a white compressed powder and sold in amounts ranging from a gram to kilograms.  I know that cocaine dealers regularly buy larger amounts of cocaine and then break it down into smaller amounts for purposes of distribution.  I know a typical user of cocaine will buy it in gram levels and use it by either nasal insufflation or burning it in a smoking device (a "pipe") and inhaling the smoke.  I know users of cocaine will generally purchase and possess an eighth of an ounce, or less, at a time.   I know that an ounce (28 grams) of cocaine is more than what is considered personal use and is indicative of further distribution.

18.    I also know that firearms are considered "tools of the trade" for drug dealers.  Drug trafficking is a dangerous business.  I know from my training and experience that drug traffickers

**Page 6 – Affidavit of Nathan Hibbs**

often possess firearms in furtherance of their drug trafficking activities for a variety of reasons, to include: First, having an accessible gun provides defense against anyone who may attempt to rob the trafficker of their drugs or drug profits; Second, possessing a gun, and letting everyone know that you are armed, lessens the chances that a robbery will even be attempted; Third, having a gun accessible during a transaction provides protection in case a drug deal turns sour; Fourth, the visible presence of a gun during the transaction may prevent the deal from turning sour in the first place; and, Fifth, having a gun may allow the drug trafficker to defend the "turf" area from which lower-level dealers operate for the trafficker.

### Conclusion

19.     Based on the foregoing, I have probable cause to believe, and I do believe, that **AARON NATHANIEL GABBERT** (**GABBERT**) committed the felony offenses of:

- Possession with Intent to Distribute Cocaine, a Schedule II Controlled Substance, in violation of 21 U.S.C. § 841(a)(l) and 841(b)(1)(C); and,

- Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c),

and I therefore request that the Court issue a criminal complaint and arrest warrant for **GABBERT** for committing these offenses.

20.     Prior to being submitted to the Court, this affidavit, the accompanying complaint and the arrest warrant were all reviewed by Assistant United States Attorney (AUSA) Scott Kerin, and AUSA Kerin advised me that in his opinion the affidavit and complaint are legally

**Page 7 – Affidavit of Nathan Hibbs**

and factually sufficient to establish probable cause to support the issuance of the requested

criminal complaint and arrest warrant.

*By phone pursuant to Fed R. Crim. P. 4.1*
Nathan Hibbs, Task Force Officer
Federal Bureau of Investigation

Subscribed and sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at ___4:06 pm___ a.m./p.m. on March 26, 2026.

_____
HONORABLE YOULEE YIM YOU
UNITED STATES MAGISTRATE JUDGE

**Page 8 – Affidavit of Nathan Hibbs**